UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EASTMAN OUTDOORS INC.,

        Plaintiff,

v.                                        CIVIL CASE NO. 05-74015
                                        HON. MARIANNE O. BATTANI

ARCHERY TRADE ASSOCIATION,
EASTON TECHNICAL PRODUCTS, INC.,
HOYT USA, INC., EASTON HOYT, LLC,
JAY MCANINCH, ERIK WATTS, TODD R.
VAALER, AND LAVERNE WOOCK,

        Defendants.

_____/

**OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION TO DISMISS PURSUANT
TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2) & (3) OR, ALTERNATIVELY,
TO TRANSFER VENUE, AND GRANTING DEFENDANTS' MOTION
TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)6)**

**I.     INTRODUCTION**

      Before the Court is Defendant's Motion to Dismiss or, Alternatively, to Transfer Venue

(Doc. #4), and Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure

12(b)(6) (Doc. #25). Plaintiff filed suit against Defendants for breach of contract and tortious

interference with a business relationship arising from the Archery Trade Association's ("ATA")

suspension of Plaintiff's membership, and for violation of antitrust laws involving ATA's

lobbying efforts in Congress to modify provisions of the Federal Excise Tax. Defendants assert

that because no part of Plaintiff's claims arose in Michigan and they lack any meaningful contact

1

with Michigan, Plaintiff's suit should be dismissed for lack of personal jurisdiction[1] pursuant to FED. R. CIV. P. 12(b)(2) and (3), or in the alternative, to transfer this case to the Eastern District of Virginia pursuant to 28 U.S.C. §1404(a) based on the convenience of the parties and the interests of justice. Defendants also assert that Plaintiff's complaint fails to state a claim for breach of contract, violation of the Sherman Act, and tortious interference with a business relationship, and should be dismissed pursuant to FED. R. CIV. P. 12(b)(6).

Eastman Outdoors is a Michigan corporation with its offices in Flushing, Michigan, and has been a member of the ATA since its beginning in 2003. Eastman Outdoors was also a long-standing member of Archery Manufacturers and Merchants Organization (AMO), the ATA's former name. Eastman Outdoors manufactures, distributes, and sells carbon arrow shafts. The defendants Easton Technical Products, Inc., Hoyt, USA, Inc., Easton Hoyt, LLC, ("Easton Companies") manufacture, distribute, and sell arrows with aluminum shafts. The Easton Companies also sell a myriad of other hunting products, such as archery bows, and other archery products. Defendant Jay McAninch is the ATA's president.

Robert Eastman, a shareholder, officer, and director or Eastman Outdoors, was elected to the Board of Directors of the ATA for a term spanning January 1, 2004, to December 2006. In September of 2005, Mr. Eastman authored an article published in Arrow Trade magazine, titled Apology Due Wood Arrow Manufacturers. In that article, Mr. Eastman criticized the ATA leadership, and specifically Jay McAninch, for failing to adequately inform and give notice to the ATA Board of the ATA's position and expenditures in its lobbying efforts to change the

---

[1] Plaintiff has agreed to dismiss defendants Watts, Vaaler, and Woock for lack of personal jurisdiction.

Federal Excise Tax ("FET").  Mr. Eastman characterized the tax change as "Mr. McAninch's flat tax legislation."  The article specifically takes issue with the conduct of the ATA Board of Directors regarding the tax legislation.  The Complaint alleges that as a result of this article, the ATA Board, without notice to Eastman Outdoors or its President, met via conference call and resolved to support a retraction from Eastman Outdoors and/or a suspension of the company's membership in the ATA.

Mr. Eastman was advised on September 16, 2005, that the "letter which was published in the most recent edition of the Arrow Trade is violative of the ATA's Rules of Conduct, and otherwise constitutes conduct which is materially and seriously prejudicial to the ATA's purposes and interests."  Compl., at para. 31.  The ATA further requested that Eastman Outdoors sign a proposed retraction.  A written response or a request for a hearing was required by September 26th.  Instead of endorsing the ATA's proposed retraction, Eastman Outdoors apologized in part by stating that:

> To the best of my knowledge the facts of my letter are accurate.  I did intend to inform the industry of an important issue that should have been debated, but was not . . . .  It is my opinion that individuals who sit on the ATA Board failed in their individual duties to the ATA membership and failed to fulfill their obligations as Board Members.  I think these individuals pushed an agenda through Congress without disclosing that agenda to the membership.  The agenda was not impartial, not equitable and will cause significant economic harm to a number of the ATA Members, if not the whole industry . . . .
> . . . I will not apologize for speaking the truth and for standing up for the rights of some members of ATA; specifically the Wood Arrow Manufacturers.

Compl., Ex. G.  On October 3, 2005, the ATA suspended Eastman Outdoors' membership in the ATA for a period of one year, stating that "the ATA Board and Executive Committee regard this as a private matter, the details of which ought to be held in confidence by all parties."  Compl.,

Ex. E.

As a result of its suspension, Plaintiff alleges that defendant ATA breached the membership contract by failing to follow its own bylaws in the suspension of Mr. Eastman. Plaintiff also alleges that by suspending its membership in the ATA, without doing so in accordance with the bylaws, Defendants have tortiously interfered with its business relationships and its prospective economic advantage. Finally, Plaintiff alleges that the Easton Companies, acting with and through the ATA, engaged in a common scheme to do the following in contravention of the Sherman Anti-Trust Act: (1) to use the ATA as a voice and vehicle to pass taxation legislation which benefitted the Easton Companies, and was to the detriment of the Easton Companies' competitors; (2) to use the ATA as a voice and vehicle that only aluminum arrows are safe for youth hunters, in effect creating a culture and habit of use of aluminum arrows use over carbon arrows among young hunters; and, to achieve this end, (3) manipulated ATA meetings to achieve a quorum of ATA Board members which would lack non-Easton Companies ATA Board members, including Eastman Outdoors, which would dissent, lobby, and vote contrary to the single minded interests of the Easton Companies.

## II.    STANDARD OF REVIEW

"Where personal jurisdiction is challenged in a 12(b)(2) motion, the plaintiff has the burden of establishing that jurisdiction exists." Am. Greetings Corp. v. Cohn, 839 F.2d 1164, 1168 (6th Cir. 1988). Plaintiff need only make a *prima facie* showing of jurisdiction in order to avoid a motion to dismiss. Intera Corp. v. Henderson, 428 F.3d 605, 615 (6th Cir. 2005). If a district court rules on a FED. R. CIV. P. 12(b)(2) motion before trial, the court, in its discretion, may adopt any of the following courses of action: (1) determine the motions based on affidavits

4

alone; (2) permit discovery, which would aid in resolution of the motion; or (3) conduct an evidentiary hearing on the merits of the motion. Serras v. First Tenn. Bank Nat'l Ass'n., 875 F.2d 1212, 1214 (6th Cir. 1989). If the court chooses to decide the motion on the written submissions alone, it must consider the pleadings and affidavits in the light most favorable to the plaintiff. Mich. Nat. Bank v. Quality Dinette, Inc., 888 F.2d 462, 466 (6th Cir. 1989).

Generally, the party bringing a motion to transfer venue pursuant to FED. R. CIV. P. 12(b)(3) and 28 U.S.C. § 1404 bears the burden of proving that the transferee district is a more convenient forum for litigation of the action. See Terra Int'l, Inc. v. Miss. Chem. Corp., 119 F.3d 688, 695 (8th Cir.), In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir.1989)(on remand of Stewart v. Ricoh Corp., 487 U.S. 22 (1988)). When the parties have contractually agreed to litigate in a particular forum, however, some courts have held that the burden of proof shifts to the party opposing transfer to demonstrate why it should not be bound by the forum selection clause. See Jumara v. State Farm Ins. Co., 55 F.3d 873, 880 (3d Cir.1995); In re Ricoh Corp., 870 F.2d at 573.

Federal Rule of Civil Procedure 12(b)(6) allows district courts to dismiss a complaint which fails "to state a claim upon which relief may be granted." "This rule allows a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if every allegation in the complaint is true. Under this standard, a complaint should be dismissed only where it appears that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Tidik v. Ritsema, 938 F.Supp. 416, 421 (E.D. Mich. 1996)(Gadola, J.). The Sixth Circuit has made it clear that "[a] complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal

theory." Weiner v. Klais & Co., 108 F.3d 86, 88 (6th Cir. 1997). The United States Supreme

Court recently reiterated this principle, holding that a complaint that fails to allege facts

supporting basic elements like loss and loss causation fails to satisfy Federal Rule of Civil

Procedure 8. Dura Pharms., Inc. v. Broudo, 125 S. Ct. 1627, 1629 (2005). When faced with a

FED. R. CIV. P. 12(b)(6) motion to dismiss, a district court,

> . . . must construe the complaint in the light most favorable to the plaintiff, accept
> all factual allegations as true, and determine whether the plaintiff undoubtedly can
> prove no set of facts in support of his claims that would entitle him to relief.
> Meador v. Cabinet for Human Resources, 902 F.2d 474, 475 (6th Cir.), cert.
> denied, 498 U.S. 867, 111 S.Ct. 182, 112 L.Ed.2d 145 (1990). A complaint need
> only give "fair notice of what the plaintiff's claim is and the grounds upon which
> it rests." Lawler v. Marshall, 898 F.2d 1196, 1199 (6th Cir.1990) (quoting
> Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957)). A
> judge may not grant a FED. R. CIV. P. 12(b)(6) motion to dismiss based on a
> disbelief of a complaint's factual allegations. Id. While this standard is decidedly
> liberal, it requires more than the bare assertion of legal conclusions. Scheid v.
> Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir.1988). "In practice,
> 'a ... complaint must contain either direct or inferential allegations respecting all
> the material elements to sustain a recovery under some viable legal theory.'" Id.
> (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th
> Cir.1984), cert. denied, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985)
> (quoting In re Plywood Antitrust Litigation, 655 F.2d 627, 641 (5th Cir.1981)).

In re DeLorean Motor Co., 991 F.2d 1236, 1240 (6th Cir. 1993). However, the court does not

give the presumption of truthfulness to any legal conclusions, opinions, or deductions, even if

they are couched as factual allegations. Sexton v. Barry, 233 F.2d 220, 223 (6th Cir.1956);

Tidik, 938 F.Supp. at 421; Western Mining Council v. Watt, 643 F.2d 618, 629 (9th Cir. 1980);

Mitchell v. Archibald & Kendall, Inc., 573 F.2d 429, 432 (7th Cir. 1978). Accordingly, to

determine whether a complaint should be dismissed for failure to state a claim under Rule

12(b)(6), this court must examine the applicable substantive law and the facts alleged in the

6

plaintiff's complaint.

**III.    ANALYSIS**

    **A.    Jurisdiction Over Defendants**

        **1.    Jurisdiction and Venue Under 15 U.S.C. §§ 15 & 22**

Federal Rule of Civil Procedure 4(k)(2) provides:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

Thus, "when a federal court exercises jurisdiction pursuant to a national service of process provision, it is exercising jurisdiction for the territory of the United States and the individual liberty concern is whether the individual over which the court is exercising jurisdiction has sufficient minimum contacts with the United States." Med. Mut. v. DeSoto, 245 F.3d 561, 567-568 (6th Cir. 2001). Section 12 of the Clayton Act, 15 U.S.C. § 22 is a combination venue and nationwide service statute. 15 U.S.C. § 22 states:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

However, 15 U.S.C. § 15, the venue provision that governs individual antitrust defendants, does not have an accompanying nationwide service provision. Thus, personal jurisdiction over individuals must be acquired in accordance with FED. R. CIV. P. 4(k)(1)(A) and state long-arm statutes.

When venue is properly established under either 15 U.S.C. § 22 or 28 U.S.C. § 1391,

jurisdiction can be asserted over, and process served on the defendant corporation anywhere. Go-Video, Inc. v. Akai Electric Co., 885 F.2d 1406, 1414 (9th Cir. 1989), Delong Equip. Co. v. Washington Mills Abrasive Co., 840 F.2d 843 (11th Cir. 1988), Myers v. Am. Dental Ass'n., 695 F.2d 716 (3d Cir. 1982), cert. denied 462 U.S. 1106 (1983).  See also Sullivan v. Tagliabue, 785 F.Supp. 1076 (D. R.I. 1992),  General Elec. Co. v. Bucyrus-Erie Co., 550 F. Supp. 1037 (S.D.N.Y. 1982), First Pullen Commodity Serv., Inc. v. A.G. Becker-Kipnis & Co., 507 F Supp 770 (S.D. Fla. 1981)(collecting cases).

When the suit proceeds under 15 U.S.C. § 22, a district court is exercising jurisdiction for the territory of the United States, and the defendant must have sufficient minimum contacts with the United States as a whole in order for the district court to acquire personal jurisdiction, and ensure that the Due Process Clause has not been offended.  DeSoto, 245 F.3d at 567-68.  In this case, the defendant corporations do not dispute that they reside within the United States and thus have meaningful ties, and sufficient minimum contacts with the forum rendering the judgment. Accordingly, this Court's exercise of jurisdiction over the Easton Companies and the ATA[2] is proper.  Id. at 568.

Accordingly, it must be determined if venue is proper in this forum to determine if nationwide jurisdiction exists over the ATA and the Easton Companies under 15 U.S.C. § 22. Section 22 provides that a suit "against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts

_____

[2] Neither party has distinguished the ATA as either an incorporated association or as an unincorporated voluntary association.  Defendants, however, have included the ATA in their arguments regarding corporate jurisdiction, venue, and referred to the ATA as a foreign corporation.  Therefore, the Court will treat the ATA as an incorporated association, and thus the potential for nationwide personal jurisdiction exists over the ATA.

8

business . . . ."  The Supreme Court established that a major premise of the "transacting business" test of Section 12 was added in order to relieve the injured person from the necessity of resorting for the redress of wrongs committed by a non-resident corporation, to a district, however distant, in which it is an "inhabitant," or may be "found."  Eastman Kodak Co. v. S. Photo Materials Co., 273 U.S. 359, 373 (1927).  Accordingly, the phrase "transacts business" has a more expansive definition than terms such as "doing business" or "carrying on business." Dunham's, Inc. v. Nat'l Buying Syndicate of Tx., 614 F.Supp. 616, (1985, E.D. Mich.).  It has been described by the Supreme Court as the "practical, everyday business or commercial concept of doing business or carrying on business of any substantial character."  U.S. v. Scophony Corp., 333 U.S. 795, 807 (1948).   Thus, "the amount of the business transacted must be judged from the 'standpoint of the average businessman' rather than from the perspective of a large corporation.  . . . [W]hen determining whether a defendant transacts business within the district, the amount of business must be viewed without comparison to the total volume of business done by the defendant corporation."  Dunham's, Inc., 614 F. Supp. at 624.  "Hairsplitting legal technicalities" are no longer to be permitted to defeat the remedial purposes of the antitrust act. Scophony Corp., 333 U.S. at 808.

With these general guidelines in mind, the substantiality of defendants the Easton Companies and the ATA's business within the Eastern District of Michigan must be evaluated. Accepting Plaintiff's allegations as true, venue is proper against the Easton Companies.  The Easton Companies' contacts, as alleged in the Complaint, with the forum state are of a continuous and systematic nature.  Thus, the Easton Companies transact business within this

forum, and venue is proper under 15 U.S.C. § 22.

Whether the ATA transacts business is a closer question. Plaintiff contends that the ATA transacts business in Michigan because nearly 10% of its members reside in Michigan, it actively solicits Michigan residents to join, and because it contributes to, organizes, and meets with Michigan officials, as well as directs and participates in youth arrow programs in Michigan. "A corporation can transact business without ever entering a state; without having salesmen or agents present there. . . . If the corporation in a practical business sense has business within the state it may be said to be in business there." Pac. Car & Foundry Co. v. Pence, 403 F.2d 949, 953 (9th Cir. 1968). By soliciting members, sponsoring programs in Michigan schools, and meeting with Michigan officials to further its agenda, the ATA carries on practical, everyday business of a "substantial character" for purposes of venue under the Clayton Act. Scophony Corp., 333 U.S. at 807. Accordingly, the Court has jurisdiction over the Easton Companies and the ATA.

### 2. General and Specific Jurisdiction Over McAninch Under Michigan's Long-Arm Statute

Personal jurisdiction may be either "general" or "specific." Bird v. Parsons, 289 F.3d 865, 873 (6th Cir. 2002). "A federal court may only exercise personal jurisdiction over a defendant if it is "(1) authorized by the law of the state in which the court sits; and (2) is otherwise consistent with the Due Process Clause of the Fourteenth Amendment." Youn v. Track, Inc., 324 F.3d 409, 417 (6th Cir. 2003) (citations omitted). In a diversity action, the law of the forum state dictates whether personal jurisdiction exists, subject to constitutional limitations. Intera Corp. v. Henderson, 428 F.3d 605, 615 (6th Cir. 2005).

10

a.     General Jurisdiction Over McAninch

General jurisdiction exists when a defendant's "contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." Bird, 289 F.3d at 873 (citing Third Nat'l Bank in Nashville v. WEDGE Group, Inc., 882 F.2d 1087, 1089 (6th Cir. 1989)).  Michigan's long-arm statute extends general jurisdiction over non-resident corporations pursuant to MICH. COMP. LAWS ANN. § 600.711.  General jurisdiction "enables a Court in Michigan to exercise jurisdiction over a corporation regardless of whether the claim at issue is related to its activities or has an in-state effect." Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 888 (6th Cir. 2002).

The only contact McAninch has had with Michigan was his presence in 2004.  His presence was motivated by the desire to lobby the state to either continue, or start-up, archery programs in Michigan schools.  His presence was in his capacity as president of the ATA.  Moreover, those acts did not give rise to the cause of action, nor were they continuous and systematic.  Therefore, general jurisdiction does not exist over McAninch.  See Balance Dynamics Corp. v. Schmitt Indus., Inc., 204 F.3d 683, 698 (6th Cir. 2000).

b.     Specific Jurisdiction Over McAninch

"Where a federal court's subject matter jurisdiction over a case stems from the existence of a federal question, personal jurisdiction over a defendant exists 'if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[ ] due process.'" Bird, 289 F.3d at 871 (quoting Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog, 954 F.2d 1174, 1176 (6th Cir.

11

1992) (internal citations omitted)).

Because there has been no evidentiary hearing on the issue of personal jurisdiction, the Court must limit its inquiry to whether Eastman has established a "*prima facie* showing of jurisdiction." CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 1996). The Court must draw all reasonable inferences and resolve all factual disputes in favor of Plaintiff as the party invoking federal jurisdiction. See Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., 91 F.3d 790 (6th Cir. 1996).

Plaintiff asserts that the Court has limited personal jurisdiction over McAninch pursuant to Michigan's long arm statute, MICH. COMP. LAWS ANN. § 600.715. Michigan's long-arm statute extends "limited" jurisdiction over non-resident corporations, and provides that limited jurisdiction will exist between an individual or his agent and the forum state in claims "arising out of the act or acts which create [certain] relationships[,]" including "the [defendant's] transaction of any business within the state." Id. The "arising out of" requirement is satisfied if the cause of action was "made possible by" or "lies in the wake of" the defendant's contact with the forum." Lanier v. Am. Bd. of Endodontics, 843 F.2d 901, 909 (6th Cir. 1988), cert. denied, 488 U.S. 926 (1988). Moreover, "the transaction of any business. . . includes 'each' and 'every'. . . . [i]t comprehends the slightest." Serras v. First Tenn. Bank Nat. Ass'n,, 875 F.2d 1212, 1217 (6th Cir. 1989)(quoting Sifers v. Horen, 188 N.W.2d 623, 624 n. 2 (Mich. 1971)).

"Michigan has construed its [long-arm] statute to reach the broadest scope of jurisdiction consistent with due process safeguards." Hertzberg & Noveck v. Spoon, 681 F.2d 474, 478 (6th Cir. 1982) (citations omitted). Therefore, whether jurisdiction under Michigan's long-arm statute attaches in a particular case requires a determination of whether the exercise of limited

12

personal jurisdiction violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution.  See Griepentrog, 954 F.2d at 1176-77; see also Bridgeport Music, Inc. v. Still N The Water Pub., 327 F.3d 472, 477 (6th Cir. 2003) ("where the state long-arm statute extends to the limits of the due process clause, the two inquiries are merged and the court need only determine whether exercising personal jurisdiction violates constitutional due process").  Therefore, if the Due Process requirements have been met, then jurisdiction exists under Michigan's long-arm statute.

The Sixth Circuit has promulgated a three-prong test that guides the determination of whether specific jurisdiction exists.  S. Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968).  The S. Machine test provides:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.  Second, the cause of action must arise from the defendant's activities there.  Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Id.  Typically, if Plaintiff meets the first two prongs of the Constitutional test, an inference arises that the third element has been met as well.  See Bird, 289 F.3d at 875.  Nevertheless, courts look at several factors when examining this third element, such as "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interests of other states in securing the most efficient resolutions of controversies."  CompuServe, Inc., 89 F.3d at 1268.

Under the first prong of the Sixth Circuit's S. Machine test, "purposeful availment . . . is present where the defendant's contacts with the forum state 'proximately result from actions by the defendant [itself] that create a "substantial connection" with the forum State.'"  Neogen, 282

13

F.3d at 889 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).  This

purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction

solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts."  Calphalon Corp. v.

Rowlette, 228 F.3d 718, 722 (6th Cir. 2000).  If it is shown that a defendant purposefully availed

itself of the forum state, "the defendant can not defeat jurisdiction unless it presents 'a

compelling case that the presence of some other considerations would render jurisdiction

unreasonable.'"  Lanier, 843 F.2d at 910, (quoting Burger King, 471 U.S. at 477).

        Plaintiff contends that the alleged wrongful conduct resulted in consequences in

Michigan, thus giving specific jurisdiction under § 600.715(2).  Specifically, Plaintiff contends

the following communication was sent into Michigan causing harm as alleged in the Complaint:

> • How Do Companies Cheat, & Other Problems In the System.  Written by Jay
> McAninch and distributed by the ATA.[3]  This document was disseminated to
> Michigan ATA members, including Eastman Outdoors, in January 2005.

        "If the nonresident conducted business, committed a tort, or furthered a tortious scheme

in the forum, even by way of phone call or written correspondence to the forum, personal

jurisdiction is appropriate."  General Motors Corp. v. Ignacio Lopez de Arriortua, 948 F.Supp.

656, 663 (E.D. Mich. 1996)(Edmunds, J.).  "'[P]urposeful availment is something akin to a

deliberate undertaking to do or cause an act or thing to be done in [the forum state] or conduct

which can be properly regarded as a prime generating cause of the effects resulting in [the forum

state], something more than a passive availment of [the forum state's] opportunities.'"  Neogen,

---

[3] Plaintiff alleges in the Complaint that defendant Watts wrote this article, not McAninch. However, the Court will view this as a factual dispute to be resolved in Plaintiff's favor, even though the dispute was created by Plaintiff.  Moreover, there is an almost identical article published in "Inside Archery" magazine, and accredited to McAninch.

14

282 F.3d at 891 (internal citation and quotation omitted).  "The emphasis in the purposeful

availment inquiry is whether the defendant has engaged in 'some overt actions connecting the

defendant with the forum state.'"  Id. (citation omitted).  The article written by McAninch could

be tortious because it accuses Plaintiff of tax evasion.  Therefore, McAninch's act satisfies the

purposeful availment prong.

Under the second prong, the requirement that Plaintiff's cause of action arises from

Defendant's activities in the forum state should not be construed too strictly.  "Only when the

operative facts of the controversy are not related to the defendant's contact with the state can it

be said that the cause of action does not arise from that [contact]."  S. Mach., 401 F.2d at 384 n.

29.  In other words, so long as the cause of action has "[a] substantial connection with

defendant's in-state activities," it is not necessary that it formally arise from defendant's contacts

with the forum.  See WEDGE Group, 882 F.2d at 1091 (quoting S. Mach., 401 F.2d at 384 n.

27).  Because Plaintiff alleges that the suspension of its membership tortiously interfered with

existing business relationships, and not the publication of the article, the operative facts of

Plaintiff's causes of action do not arise from the publication or transmission of the McAninch

article into Michigan, and thus, the second prong of the S. Machine test is not satisfied.

Therefore, the Court lacks personal jurisdiction over McAninch.


**B.      Defendants Have Not Made a Strong Enough Showing to Overcome
          Plaintiff's Choice of Forum**

28 U.S.C. § 1404(a) provides that "for the convenience of parties and witnesses, in the

interest of justice, a district court may transfer any civil action to any other district or division

15

where it might have been brought." The moving party must demonstrate the propriety of a transfer by a preponderance of the evidence. Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir. 1978); Rodgers v. Northwest Airlines, 202 F.Supp. 309, 312 (D.C. N.Y. 1962) (internal quotation omitted).

At the threshold of the court's transfer of venue determination, "[t]he first question for a court when considering a motion under §1404(a) is whether 'the transferred action could have been brought in the transferee court.'" Grand Kensington, LLC v. Burger King Corp., 81 F.Supp.2d 834, 836 (E.D. Mich. 2000)(Zatkoff, J.)(quoting MCNIC Oil & Gas Co. v. IBEX Resources Co., L.L.C., 23 F.Supp.2d 729 (E.D. Mich. 1998)(Gadola, J.)).

As an initial matter, it appears that Plaintiff could have brought its claims in the Eastern District of Virginia. While Plaintiff argues that Defendants have not established that the transferee court would have jurisdiction over all Defendants, it certainly would have jurisdiction over the Easton Companies, the ATA, and McAninch: the defendants Plaintiff determined most important to sue by virtue of its agreement to dismiss the remainder. Moreover, Defendants concede that personal jurisdiction exists over the remaining individually named defendants Vaaler, Woock, and Watts. Thus, the transferee court would have jurisdiction over all Defendants.

Second, in evaluating a motion to transfer under § 1404(a), the Court must "determine if a transfer would make it substantially easier for the parties to litigate the case." Becnel v. Smile Cmty. Action Agency, Inc., 207 F.Supp. 2d 520, 522 (M.D. La. 2001) (citation omitted). To make this determination, the court must consider the following factors: (1) convenience of the

16

parties and the witnesses, (2) accessibility of sources of proof, (3) the costs of securing testimony from witnesses, (4) practical problems associated with trying the case in the least expensive and most expeditious fashion, and (5) the interests of justice. Other factors include: (6) the relative congestion in the courts of the two forums, (7) the public's interest in having local controversies adjudicated locally, (8) the relative familiarity of the two courts with the applicable law, (9) the plaintiff's original choice of forum; and, (10) whether the parties have agreed to a forum selection clause. Viron Intern. Corp. v. David Boland, Inc., 237 F.Supp. 2d 812, 816 (W.D. Mich. 2002), Moses v. Bus. Card Express, Inc., 929 F.2d 1131, 1136-37 (6th Cir. 1991), MOORE'S FEDERAL PRACTICE § 111.13[1][b] at 111-66-67 (3d ed.).  District courts have "wide discretion to transfer an action under §§ 1404(a) in order to prevent waste of time, energy and money, and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964).  However, a court "should give deference to a plaintiff's choice of venue." General Motors Corp., 948 F.Supp. at 668.  "When a defendant moves to change the forum, he must overcome the presumption that the plaintiff has chosen the proper forum." Id.

The first factor to consider does not favor either party.  It appears that either side would have to make arrangements for witnesses to travel to either forum.  Defendants Woock, Vaaler, Watts, and the Easton Companies would have to travel regardless of which forum is deemed appropriate.  The accessibility of the sources of proof also does not favor either side, because the evidence consists mainly of documents and testimony, which is not stationary.  Again, the costs of securing witnesses do not favor either side, as travel would be required either way.  The fourth factor does not favor transfer because transferring the case at this point in time is not the most

17

expeditious and least expensive path to litigation.  The sixth, eighth, ninth, and tenth factors also do not favor transfer.  Plaintiff has asserted claims involving federal law and tort actions.[4]  Thus, they are not causes of action that require intricate knowledge of state law.  Further, Plaintiff's original choice of forum weighs against transfer, and the parties did not agree to a forum selection clause.

Because the Court does not have personal jurisdiction over McAninch, or the other individually named defendants, the interest of justice would be served by transferring the case. The public's interest in having local controversies adjudicated locally would also weigh in favor of transfer.  However, overall, Defendants have not made a strong enough showing to overcome Plaintiff's choice of forum.

### C.   Plaintiff's Complaint Fails to State a Claim for Breach of Contract, Violation of the Sherman Act, and Tortious Interference With a Business Relationship

#### 1.   Breach of contract

Section 4.06 of the ATA's bylaws state:

Suspension of Membership.  A member may be suspended under Section 4.07 of these Bylaws, based on the good faith determination by the Board, or a committee or person authorized by the Board to make such a determination, that the member has failed in a material and serious degree to observe the Corporation's rules of conduct, or has engaged in conduct materially and seriously prejudicial to the Corporation's purposes and interests.

However, the Membership Terms and Conditions, which are incorporated into the

_____

[4] Defendants contend that this is not the proper forum for Plaintiff's breach of contract claim, because it raises matters relating to internal affairs and governance of a Virginia corporation, matters traditionally left to the province of the corporation's home state.   However, the breach of contract claim does not reach the internal affairs or governance of corporate matters.  See RESTATEMENT (SECOND) CONFLICT OF LAWS § 313.  Even if the case did deal with internal corporate governance, that fact alone is not dispositive on the issue of venue.  Id.

membership agreement, prohibit the ATA's members from seeking an injunction or any form of damages on any matter concerning the membership agreement or the bylaws.  Plaintiff asserts that there is a factual dispute regarding what version of ATA's bylaws were in effect at the time the Complaint was filed.  However, there is no dispute that the Membership Terms and Conditions that foreclose suit for an injunction or damages against the ATA for violating the terms of the bylaws were in effect.  Moreover, as Defendants point out, Robert Eastman was a member of the board at the time the "updated" version of the bylaws were adopted and had notice of the new or different terms.  Therefore, Plaintiff is contractully foreclosed from suing the ATA for violating the bylaws as a result of obligations or duties that arise under the membership agreement, and the breach of contract claim is DISMISSED with prejudice.

### 2.      The Sherman Act

Plaintiff alleges that the anti-competitive behavior that the ATA engaged in was the ATA's and the Easton Companies agreement (the "Agreement") to expel it from the ATA board in order to silence criticism of the agenda to lobby Congress to change the FET,[5] and that the expulsion was intended to prevent or inhibit Eastman Outdoors from entering into direct competition with the Eastman Companies.  Compl. at para. 40.  Further, Plaintiff alleges that it has been damaged by the Agreement through the impairment of its business, trade, and goodwill, and that it will be irreparably harmed because it will be unlawfully inhibited from conducting its interstate business.  Id., at para. 43.

Section 1 of the Sherman Antitrust Act prohibits "[e]very contract, combination . . . , or

---

[5] Efforts to lobby Congress are exempt from the reach of the federal antitrust laws.  E. R.R. Presidents Conference v. Noerr Motor Freight, Inc., 305 U.S. 127 (1961), United Mine Workers v. Pennington, 381 U.S. 657 (1965).

conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. "Recognizing that nearly every contract binding parties to an agreed course of conduct amounts to some sort of 'restraint of trade,' the Supreme Court has limited the restrictions of section 1 to bar only 'unreasonable restraints.'" Care Heating & Cooling, Inc. v. Am. Standard, Inc., 427 F.3d 1008, 1012 (6th Cir. 2005)(citations omitted).

"Two analytical approaches have developed to determine whether a defendant's conduct unreasonably restrains trade: the *per se* rule and the rule of reason. The *per se* rule identifies certain practices that completely lack redeeming competitive rationales." Care Heating & Cooling, 427 F.3d at 1012 (citations omitted). *Per se* restraints "are deemed unlawful per se" because they "have such predictable and pernicious anticompetitive effect, and such limited potential for procompetitive benefit." State Oil Co. v. Khan, 522 U.S. 3, 10 (1997). "*Per se* treatment is appropriate '[o]nce experience with a particular kind of restraint enables the Court to predict with confidence that the rule of reason will condemn it.'" Id. (quoting Arizona v. Maricopa County Med. Soc., 457 U.S. 332, 344 (1982); see also Broad. Music, Inc. v. Columbia Broad. Sys., Inc., 441 U.S. 1, 19-20 (1979) (a *per se* rule is applied when "the practice facially appears to be one that would always or almost always tend to restrict competition and decrease output."). "The *per se* approach thus applies a 'conclusive presumption' of illegality to certain types of agreements, . . . [and] where it applies, no consideration is given to the intent behind the restraint, to any claimed pro-competitive justifications, or to the restraint's actual effect on competition." In re Cardizem CD Antitrust Litigation, 332 F.3d 896, 906 (6th Cir. 2003)(quoting Maricopa County, 457 U.S. at 344.

> The Supreme Court has identified certain types of restraints as subject to the *per se* rule. The classic examples are naked, horizontal restraints pertaining to prices

20

or territories.  See, e.g., NCAA, 468 U.S. at 100, 104 S.Ct. 2948 ("Horizontal price fixing and output limitation are ordinarily condemned as a matter of law under an 'illegal *per se*' approach because the probability that these practices are anticompetitive is so high."); Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 768, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984) ("Certain agreements, such as horizontal price fixing and market allocation, are thought so inherently anticompetitive that each is illegal *per se* without inquiry into the harm it has actually caused."); United States v. Topco Assocs., 405 U.S. 596, 608, 92 S.Ct. 1126, 31 L.Ed.2d 515 (1972) ("One of the classic examples of a *per se* violation of § 1 is an agreement between competitors at the same level of the market structure to allocate territories in order to minimize competition.  Such concerted action is usually termed a 'horizontal' restraint, in contradistinction to combinations of persons at different levels of the market structure, e.g., manufacturers and distributors, which are termed 'vertical' restraints.  This Court has reiterated time and time again that horizontal territorial limitations . . . are naked restraints of trade with no purpose except stifling of competition.  Such limitations are *per se* violations of the Sherman Act." (internal citations omitted)); Northern Pacific Ry., 356 U.S. at 5, 78 S.Ct. 514 ("Among the practices which the courts have heretofore deemed to be unlawful in and of themselves are price fixing, division of markets, group boycotts, and tying arrangements." (internal citations omitted)).

Id., at 907.  However, "*per se* rules are appropriate only for conduct that is manifestly anticompetitive, that is, conduct that would always or almost always tend to restrict competition and decrease output."  Bus. Elecs. Corp. v. Sharp Elecs. Corp., 485 U.S. 717, 723 (1988) (citations and quotations omitted).  Moreover, "[t]here is an automatic presumption in favor of the rule of reason standard."  Care Heating & Cooling, 427 F.3d at 1012 (citing Bus. Elecs. Corp. v. Sharp Elecs. Corp., 485 U.S. 717 (1988)).

Thus, while Plaintiff alleges a horizontal restraint on trade by alleging an anticompetitive agreement between competitors at the same level, the Agreement is not one of: horizontal price fixing and market allocation, group boycotts, or tying arrangements.  Nor is it an agreement that has a "predictable and pernicious anticompetitive effect, and such limited potential for

21

procompetitive benefit." State Oil Co., 522 U.S. at 10.  The Agreement was not meant to stifle competition *per se*, but rather to stifle dissent to planned lobbying efforts.  Plaintiff contends that the lobbying efforts to change the FET had the effect, and intent, of preventing or inhibiting Eastman Outdoors from entering into direct competition with the Easton Companies, and that it has been damaged by the Agreement through the impairment of its business, trade, and goodwill. Compl. at paras. 40, 43.  There are no allegations of price fixing or market allocation that would trigger the *per se* rule.  See Maricopa County, 457 U.S. at 349.

Even if the Court were to find that the *per se* rule applied, Plaintiff has failed to allege an antitrust injury.  See In re Cardizem CD Antitrust Litigation, 332 F.3d at 909 n. 15.  "A private antitrust plaintiff, in addition to having to show injury-in-fact and proximate cause, must allege, and eventually prove, 'antitrust injury.'"  Id., at 909.  "Antitrust injury" is (1) "injury of the type the antitrust laws were intended to prevent" and (2) injury "that flows from that which makes defendants' acts unlawful."  Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977).  "[T]he Sherman Act was intended to protect competition and the market as a whole, not individual competitors, the foundation of an antitrust claim is the alleged adverse effect on the market."  Care Heating & Cooling, 427 F.3d at 1014 (citations omitted).  Moreover, "[i]ndividual injury, without accompanying market-wide injury, does not fall within the protections of the Sherman Act.  See Dunn & Mavis, 91 F.2d at 243-44 (holding that a complaint which fails to allege facts establishing that defendant's conduct had any significant anticompetitive effect on the market fails to state an antitrust claim)."  Id.

First, Plaintiff has not alleged an antitrust injury that adversely effects the market as a whole.  Rather, it has solely alleged injuries specific to it; i.e., individual injury resulting from

22

the alleged anti-competitive acts: "The defendants intended that Eastman should be damaged and lose customers and revenue as a result of their actions."  Compl. at para. 40.  There is no allegation whatsoever as to how suspending Plaintiff's membership in the ATA would have an adverse effect on the market, or even how Defendants' actions would have any anti-competitive effects at all.

Moreover, dismissal is proper because Plaintiff's injury directly flows from an action that the ATA was legally entitled to make: namely, suspend Plaintiff's membership.[6]  Therefore, Plaintiff's injury does not flow from that which makes ATA's acts unlawful, and its antitrust claim is DISMISSED with prejudice.  See In re Cardizem CD Antitrust Litigation, 332 F.3d at 914.

### 3.    Tortious Interference With a Business Relationship

The Virginia Supreme Court has summarized the elements of tortious interference as follows: "(1) the existence of a business relationship or expectancy, with a probability of future economic benefit to plaintiff; (2) defendant's knowledge of the relationship or expectancy; (3) a reasonable certainty that absent defendant's intentional misconduct, plaintiff would have

continued in the relationship or realized the expectancy; and (4) damage to plaintiff."  Glass v. Glass, 321 S.E.2d 69, 77 (Va. 1984).

Plaintiff alleges that Defendants intended to interfere with Plaintiff's existing relationships with distributors, retailers, and end-users by suspending its membership, and thus,

---

[6] Whether defendant ATA was legally entitled to suspend Plaintiff's membership is a separate question from whether the ATA unlawfully suspended Plaintiff's membership in contravention of the association's bylaws, and does not affect the antitrust injury analysis.

excluding it from the ATA tradeshow and, ostensibly, ATA's endorsement of its products. Compl. at paras. 46-47. Defendants contend that Plaintiff did in fact have a booth at the trade show and has photographs and other documentary evidence to prove Plaintiff's presence. Since the time of the hearing, Plaintiff has filed a correction of its allegation that it was excluded from the 2006 ATA tradeshow, and now admits that it was not entirely excluded.

Defendants cite an Eastern District of Virginia case to support their contention that Plaintiff's claim should be dismissed because it has neither identified the customer contracts allegedly interfered with, or alleged how, when, and/or where Defendant interfered. Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC, 261 F. Supp. 2d 483, 500-501 (E.D. Va. 2003). In Bay Taco, the court dismissed the plaintiff's claim because the plaintiff could not "prove facts it does not allege." Id., at 501. Likewise, in this case, the Complaint does not contain either direct or inferential allegations with respect to all material elements, including loss and causation, necessary to sustain a recovery under a viable legal theory, and does not identify a single instance in which a business relationship was interfered with because the ATA suspended its membership. See Weiner, 108 F.3d at 88, Dura Pharms., Inc. v. Broudo, 125 S. Ct. 1627, 1629 (2005). A complaint that fails to allege facts supporting basic elements like loss and loss causation fails to satisfy Federal Rule of Civil Procedure 8. Dura Pharms., 125 S. Ct. at 1629. Therefore, Plaintiff's tortious interference claim is DISMISSED without prejudice.

IV.    CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) is **GRANTED.  IT IS FURTHER ORDERED THAT** Plaintiff's Breach of Contract and Antitrust Claims are **DISMISSED WITH**

24

**PREJUDICE.  IT IS FURTHER ORDERED THAT** Plaintiff's Tortious Interference With a Business Relationship Claim is **DISMISSED WITHOUT PREJUDICE.  IT IS FURTHER ORDERED THAT** Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) and (3) or, alternatively, to Transfer Venue is **GRANTED IN PART,** and **DENIED IN PART.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

DATED: June 6, 2006

### CERTIFICATE OF SERVICE

Copies of this Order were mailed to counsel of record on this date by ordinary mail and/or electronic filing.

s/Bernadette M. Thebolt
DEPUTY CLERK

25